UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ROSETTA ALESSI,

              Plaintiff,

              **DECISION AND ORDER**
v.                14-CV-7220 (WFK)

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

              Defendant.
-----------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

Plaintiff Rosetta Alessi ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) alleging Carolyn W. Colvin, the Commissioner of Social Security ("Commissioner"), improperly denied Plaintiff's request for Social Security Disability ("SSD") benefits. The Commissioner filed a motion for judgment on the pleadings requesting an order affirming the Commissioner's decision and dismissing the action. Dkt. 14 ("Commissioner's Motion"). Plaintiff filed a cross-motion for judgment on the pleadings requesting that the Court vacate the Commissioner's decision and remand this action for additional administrative proceedings. Dkt. 16 ("Plaintiff's Motion"). For the reasons that follow, the Commissioner's motion is DENIED and Plaintiff's motion is GRANTED.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was born on November 28, 1954. *See* Dkt. 19 ("R.") at 44. On January 9, 2012, Plaintiff filed an application to the Social Security Administration ("SSA") for SSD benefits under Title II and XVIII of the Social Security Act claiming she became unable to work due to a disabling condition beginning on December 30, 2011. *Id.* at 27, 142. Plaintiff claimed she suffered from severe back and knee pain, migraines, and degenerative disc disease. *Id.* at 153. Prior to her application for SSD benefits, Plaintiff worked as a manager in a restaurant owned by her husband where her duties included keeping track of supplies, paying bills, ordering and transporting missing items, supervising employees, doing waitressing work, stocking items, all

of which required her to lift at most 20 pounds occasionally and to lift 10 pounds frequently. *Id.* at 47-48, 145-146.

Plaintiff's claim was initially denied on April 9, 2012. *Id.* at 27. Plaintiff thereafter requested a hearing before the Administrative Law Judge ("ALJ"), which was held on April 3, 2013 before ALJ James Kearns (the "ALJ"). *Id.* at 27, 43. At the April 3, 2013 hearing, Plaintiff, represented by counsel, described symptoms somewhat inconsistent with those described in a January 24, 2012 disability questionnaire filled out by Plaintiff's daughter-in-law Marie Alessi, including: severe back pain, inability to pick up objects with her hands, severe pain beginning at her feet and traveling up to her hips and back, constant migraines, inability to cook or pick up pots and pans, inability to go grocery shopping, inability to sit for more than an hour (though Plaintiff also mentioned traveling to Sicily between the alleged onset of her disability and the hearing), inability to walk more than half a block, inability to carry a large pocketbook, extremely poor balance, and general dizziness and sleepiness as a result of her medications. *Id.* at 49-52, 159-171.

On April 12, 2013, the ALJ issued a decision finding Plaintiff was not disabled. *Id.* at 27-35. The Appeals Counsel denied Plaintiff's request for review on October 7, 2014. *Id.* at 1-3. This denial became the Commissioner's final act.

## DISCUSSION

### I. Standard of Review

When a claimant challenges the SSA's denial of disability benefits, the Court's function is not to evaluate *de novo* whether the claimant is disabled, but rather to determine only "whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *amended on reh'g*, 416 F.3d 101 (2d Cir.

2005); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"); *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). Substantial evidence is "more than a mere scintilla"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted) (citing *Consol. Edison Co. of N.Y., Inc. v. NLRB*, 305 U.S. 197, 229 (1938)); *Moran*, 569 F.3d at 112. The substantial evidence test applies not only to the Commissioner's factual findings, but also to inferences and conclusions of law to be drawn from those facts. *See Carballo ex rel. Cortes v. Apfel*, 34 F. Supp. 2d 208, 214 (S.D.N.Y. 1999) (Sweet, J.). In determining whether the record contains substantial evidence to support a denial of benefits, the reviewing court must examine the entire record, weighing the evidence on both sides to ensure that the claim "has been fairly evaluated." *See Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983)).

It is the function of the SSA, not the federal district court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983) (citing *Richardson*, 402 U.S. at 399); *see also Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). Although the ALJ need not resolve every conflict in the record, "the crucial factors in any determination must be set forth with sufficient specificity to enable [the reviewing court] to decide whether the determination is supported by substantial evidence." *Calzada v. Asture*, 753 F. Supp. 2d 250, 268-269 (S.D.N.Y. 2010) (Sullivan, J.) (citing *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)) (quotation marks omitted). To fulfill this burden, the ALJ must "adequately explain his reasoning in making the findings on which his ultimate decision rests" and must "address all

pertinent evidence." *Kane v. Astrue*, 942 F. Supp. 2d 301, 305 (E.D.N.Y. 2013) (Kuntz, J.) (quoting *Calzada*, 753 F. Supp. 2d at 269). "[A]n ALJ's failure to acknowledge relevant evidence or to explain its implicit rejection is plain error." *Id.* (internal quotation marks and citations omitted). Remand is warranted when "there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999).

## II. Determination of Disability and Parties' Cross-Motions

### A. Applicable Law

For purposes of SSD benefits, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). The impairments in question must be of "such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner must apply the five-step sequential process set forth in 20 C.F.R. § 404.1520. *See e.g., Rosa*, 168 F.3d at 77. The claimant bears the burden of proving the first four steps, while the burden shifts to the Commissioner at the fifth step. *Id.* First, the Commissioner must determine whether claimant is engaging in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not so engaged, the second step is to determine whether the claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant

has such an impairment, the third step is to determine whether the impairment or combination of impairments meets or equals one of the listings in Appendix 1 of the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairment does not match any of the listings, the fourth step is to determine whether the claimant's residual functional capacity ("RFC") allows the claimant to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant cannot perform past relevant work, the final step is to determine whether the claimant can perform another job based on his or her RFC, work experience, age, and education. 20 C.F.R. § 404.1520(a)(4)(v).

**B. The ALJ's Decision**

On April 12, 2013, the ALJ issued his decision denying Plaintiff's application for SSD benefits. R. at 27-35. The ALJ followed the five-step procedure to evaluate Plaintiff's claim and found that: (1) Plaintiff had not engaged in substantial gainful activity since December 30, 2011, the alleged onset date; (2) Plaintiff had severe impairments of degenerative disc disease and migraines, as well as a non-severe knee impairment; (3) Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) Plaintiff had the RFC to perform the full range of "light work" as defined in 20 C.F.R. 404.1567(b)[1]; and (5) Plaintiff was capable of performing past relevant work as a restaurant manager. *Id.* at 30-34.

Before determining that Plaintiff had the RFC to perform light work, the ALJ reviewed Plaintiff's testimony, the January 24, 2012 disability questionnaire filled out by Marie Alessi, and the medical evidence, including Plaintiff's October 28, 2011 lumbar MRI, Plaintiff's March

---

[1] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds[,]" as well as "a good deal of walking or standing[.]" 20 C.F.R. 404.1567(b).

12, 2012 cervical MRI, Plaintiff's March 13, 2012 brain MRI, treatment notes from Dr. Joseph Suarez, M.D., Dr. John Reilly, M.D., Dr. Germaine Rowe, M.D., and Dr. Theodore Strange, M.D., Plaintiff's treating physicians, a report from Dr. Chitoor Govindaraj, M.D., a consultative physician, and a report from C. Stewart, a state agency medical consultant. *Id.* at 31-34.

The ALJ found Plaintiff "not fully credible to the extent that she felt she was disabled." *Id.* at 32. In support of this finding, the ALJ cited the following inconsistencies: (1) Plaintiff's brain MRI was normal, she had no record of neurological abnormalities, and her January 24, 2012 disability questionnaire stated she experienced headaches once a month for 24 hours, in contrast with her statement at the hearing that she had constant migraines; (2) Plaintiff's claims of extremely limited functionality were inconsistent with her January 24, 2012 disability questionnaire answers, the MRIs, and Plaintiff's own description of her activities, including a two week trip to Sicily in August 2012; and (3) Plaintiff's statements regarding the level of her pain were inconsistent with the conservative care she has undergone, the MRIs, and the statements that the lumbar braces and pain relief cream have led to some improvement. *Id.* at 32-33. The ALJ further found "[n]othing in the record reflects any form of debilitating condition that would prevent the claimant from performing light exertion and returning to her past job." *Id.* at 33.

The ALJ gave "[g]reat weight" to consultative examiner Dr. Govindaraj's opinion that Plaintiff could perform work-related activities as it was consistent with the record. *Id.* at 33. The ALJ, however, "g[ave] no significant weight" to the statements by Drs. Suarez, Reilly, and Strange that Plaintiff could not work because those statements (1) spoke to an issue reserved to the Commissioner; (2) were unsupported by the record of conservative care; (3) were unsupported by MRIs showing no disc herniations or significant spinal canal or foraminal

stenosis; (4) were unsupported by any specific function-by-function assessments of Plaintiff's physical work-related abilities; and (5) Plaintiff, as of January 24, 2012, was able to care for her 95-year-old mother and be independent almost all daily life activities. *Id.* at 33-34. The ALJ also gave the state agency consultant C. Stewart's opinion "no significant weight" because "as a single decision maker that consultant is not an acceptable medical source within the meaning of 20 CFR 404.1513(c)[.]" *Id.* at 34. Accordingly, the ALJ concluded Plaintiff could perform her past relevant work as a restaurant manager, and was not under a disability from December 30, 2011 to April 12, 2013, the date of the ALJ's decision. *Id.* at 34.

### C. The Parties' Cross-Motions

On August 10, 2015, the parties filed cross-motions for judgment on the pleadings. Commissioner's Motion; Plaintiff's Motion; Dkt. 17 ("Commissioner's Reply"); Dkt. 18 ("Plaintiff's Reply"). The Commissioner argues the Court should affirm the ALJ's decision because substantial evidence exists to support the ALJ's denial of SSD benefits. Commissioner's Motion at 1. Plaintiff requests that the Court vacate and remand the ALJ's decision because the ALJ (1) improperly failed to develop the record by failing to seek out function-by-function assessments from treating physicians Drs. Suarez, Reilly, and Strange; (2) gave undue weight to consultative examiner Dr. Govindaraj, who only saw Plaintiff once and did not review the lumbar or cervical MRIs; and (3) failed to properly assess Plaintiff's credibility and give appropriate weight to her subjective complaints. Plaintiff's Motion at 14-24. The Commissioner responds that (1) the ALJ was not required to further develop the record as the existing notes from Drs. Suarez, Reilly, and Strange, the report of Dr. Govindaraj, the MRIs, and Plaintiff's testimony constituted a complete record already; (2) the ALJ properly weighed Dr.

Govindaraj's opinion; and (3) the ALJ properly assessed Plaintiff's credibility. Commissioner's Reply at 1-10.

For the reasons set forth below, the Court DENIES the Commissioner's motion, GRANTS the Plaintiff's motion, and VACATES the ALJ's decision and REMANDS the case for further administrative proceedings consistent with this opinion.

**III. The ALJ had a Duty to Further Develop the Record**

Plaintiff first argues remand is appropriate because the ALJ was required to further develop the record. Plaintiff's Motion at 14-18. Generally, if the record contains a gap or is otherwise incomplete, then, even under the amended regulations effective March 26, 2012, courts in the Second Circuit have held the ALJ has an affirmative duty to further develop the record. *See, e.g., Merriman v. Comm'r of Soc. Sec.*, 14-CV-3510, 2015 WL 5472934, at *1-2 (S.D.N.Y. Sept. 17, 2015) (Gardephe, J.) (internal citations omitted) (finding ALJ had affirmative duty to develop record by seeking further information from physicians regarding functional limitations caused by plaintiff's elbow problem and mental illness); *Vazquez v. Comm'r of Soc. Sec.*, 14-CV-6900, 2015 WL 4562978, at *17 (S.D.N.Y. July 21, 2015) (Francis, Mag. J.) (internal citations omitted) (finding ALJ had affirmative duty to develop record by seeking further information from physician where ALJ felt physician's statement required clarification); *Garcia v. Colvin*, 12-CV-2140, 2014 WL 119433, at *7 (E.D.N.Y. Jan. 10, 2014) (Garaufis, J.) (finding clear gap in record triggered ALJ's affirmative duty to develop record where ALJ found there was "no evidence" regarding whether the plaintiff had a "worsening condition").

Failure to develop the record by failing to seek a medical source opinion containing a function-by-function assessment will not always result in remand, as the lack of such an

assessment will not always render the record incomplete. *See, e.g., Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33-34 (2d Cir. 2013) (extensive record including medical source statement regarding functional limitations by one treating physician contained sufficient evidence from which the ALJ could assess the Plaintiff's RFC); *Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013) (ALJ not required to seek medical source statement by treating physician where ALJ possessed treatment notes of treating physicians regarding functional limitations and most of the consultative examiner's RFC assessment).

However, where failure to seek a medical source opinion renders the record incomplete, then an ALJ may be found to have failed to develop the record. For example, "[i]n *Tankisi*, although the administrative record did not contain formal opinions from treating physicians, a treating source had otherwise assessed Tankisi's limitations, and the ALJ had before him the functional assessments of multiple consultative examiners." *Hernandez v. Comm'r of Soc. Sec.*, 13-CV-959, 2015 WL 275819, at *2 (N.D.N.Y. Jan. 22, 2015) (Sharpe, J.) (citing *Tankisi*, 521 F. App'x at 34) (internal quotation marks omitted). In contrast, "[i]n *Pellam*, the Second Circuit explicitly left open the question of whether a record would be rendered incomplete by the failure to request a medical source opinion from a treating physician if the ALJ made his RFC determination without the support of any expert medical source opinion concerning the claimant's limitations." *Id.* (citing *Pellam*, 508 F. App'x at 90 n.2) (internal quotation marks and brackets omitted).

Here, the record considered by the ALJ included the lumbar and cervical MRIs, the treatment notes from Plaintiff's treating physicians, and a functional assessment by Dr. Govindaraj. However, the record is insufficient to establish that Plaintiff had the RFC to perform "light work."

For example, most of the acceptable medical source opinions considered by the ALJ do not provide any information which could help assess Plaintiff's ability to lift, stand, walk, or otherwise perform "light work." *See generally* R. While Dr. Reilly made note of Plaintiff's symptoms, recommended Plaintiff to Dr. Rowe for pain management, reviewed the lumbar and cervical MRIs, and wrote Plaintiff was "totally disabled," he made no findings on Plaintiff's ability to stand, sit, walk, or lift. *Id.* at 272-273. Similarly, while Dr. Rowe recounted Plaintiff's symptoms and history, reviewed and summarized Plaintiff's lumbar and cervical MRI results, stated Plaintiff's left-sided radicular pain had subsided, and prescribed a cervical and lumbar brace and a compounding pain relief cream because of Plaintiff's inability to tolerate the side effects of the pain medications Mobic, Ultracet, Vicodin extra strength, Motrin, and Flexeril, she never opined as to Plaintiff's ability to stand, sit, walk, or lift. *Id.* at 306-310. Likewise, while Dr. Strange wrote a letter on March 27, 2013 stating Plaintiff's back pain does not allow her to perform work of any kind, based on a review of Dr. Suarez's records and her MRIs, he made no findings about Plaintiff's ability to stand, sit, walk, or lift. *Id.* at 281.

Moreover, the only two doctors who did opine on Plaintiff's ability to perform "light work" – Dr. Suarez and Dr. Govindaraj – provide contradictory reports. *Id.* at 246-247, 303. While Dr. Suarez found (1) Plaintiff could not sit or stand for long periods of time, (2) Plaintiff could not lift, push, or pull anything more than five to ten pounds on an occasional basis, and (3) Plaintiff had a "total disability" and would "not be able to return to any type of gainful employment[,]" Dr. Govindaraj found Plaintiff (1) refused to bend more than thirty degrees because she said it would cause her pain, but had no clinical evidence of any abnormality in the spine, (2) Plaintiff's knees had normal range of motion and no significant abnormality, (3) Plaintiff's motor and sensory systems and reflexes were normal, (4) Plaintiff's range of motion

of back and joints were normal, (5) Plaintiff's hand dexterity was normal, (6) Plaintiff had no evidence of muscle spasm, (7) Plaintiff's gait and posture were normal, (8) Plaintiff was "medically cleared and stable with no restriction in standing, walking, sitting or weight restriction", and (9) Plaintiff's medical prognosis was "good." *Id.* at 246-247, 303. Furthermore, Dr. Suarez did not perform any further function by function analysis, and Dr. Govindaraj did not review the lumbar or cervical MRIs. *Id.* at 245-248, 303.

Based on the foregoing, there is insufficient basis in the record to determine whether Plaintiff had the RFC to perform "light work" especially because Dr. Govindaraj, the sole medical source whose functional assessment the ALJ gave "great weight" to did not review the lumbar and cervical MRIs, which showed some abnormalities. *Id.* at 33, 221, 293. Moreover, doctors who did review the lumbar and cervical MRIs and concluded Plaintiff would be unable to return to any kind of work, did not provide full explanations for their findings. *Id.* at 273, 281, 303.

While the ALJ himself considered the MRIs, the ALJ is not a medical professional who can interpret the MRIs to assess Plaintiff's RFC. *See, e.g., Merriman*, 2015 WL 5472934 at *18 ("Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own judgment for that of a physician, and has committed legal error.") (internal quotation marks and citation omitted); *Hernandez*, 2015 WL 275819 at *2 ( "Without the advice of . . . a medical source, the ALJ, as a layperson, cannot bridge the gap between [the plaintiff's] impairments and the functional limitations that flow from those impairments.") (citation omitted).

Accordingly, given the gaps in the record and the absence of a thorough and sufficient medical assessment of Plaintiff's ability to sit, stand, walk, or lift from any physician who had

seen the lumbar and cervical MRIs, the ALJ committed legal error by deciding Plaintiff could perform past relevant work without seeking to fill this gap. *See, e.g., Merriman*, 2015 WL 5472934 at *2. On remand, the ALJ should re-contact Drs. Suarez, Reilly, and Strange for medical assessments of Plaintiff's ability to sit, stand, walk, and lift, and weigh these assessments against Dr. Govindaraj's report. *See, e.g., Beckwith v. Comm'r of Soc. Sec.*, 13-CV-1555, 2015 WL 860763 at *7 (N.D.N.Y. Feb. 27, 2015) (Suddaby, J.) (instructing ALJ to re-contact treating physician for clarification of contradictory statements regarding the claimant's functional abilities).

Furthermore, the ALJ used his own interpretation of Plaintiff's lumbar and cervical MRIs to support his assessment that Plaintiff was not fully credible. R. at 33. To the extent that the ALJ's assessment of Plaintiff's credibility relied on the ALJ's own evaluation of the MRIs in the absence of supporting expert medical opinion, the ALJ is hereby instructed to reconsider that assessment. *See, e.g., Hernandez*, 2015 WL 275819 at *2.

The Court hereby VACATES the ALJ's decision and REMANDS the case for further administrative proceedings consistent with this opinion, pursuant to the fourth sentence of 42 U.S.C. § 405(g).

## CONCLUSION

For the reasons stated herein, the Commissioner's motion for judgment on the pleadings, Dk. 13, is hereby DENIED, and Plaintiff's cross-motion for judgment on the pleadings, Dkt. 15, is hereby GRANTED. The Court hereby REMANDS this action to the Social Security Administration for further administrative proceedings consistent with this opinion, pursuant to the fourth sentence of 42 U.S.C. § 405(g).

SO ORDERED.

s/WFK

_____
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: December 9, 2015
      Brooklyn, New York